**TRUSTEES OF THE HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION WELFARE PENSION FUND, the Officers and Employees of the Locals of the Hotel Employees and Restaurant Employees International Union Pension Fund and the Hotel Employees and Restaurant Employees International Union Officers and Staff Plan, Plaintiffs,**

v.

**AMIVEST CORPORATION, a New York corporation, Defendant.**

No. 89 C 2583.

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1990.

Iverson, Yoakum, Papiano & Hatch, Los Angeles, Cal., and John J. Moran, Rock, Rusco & Reynolds, Chicago, Ill., for plaintiffs.

L. Andrew Brehm, Schuyler, Roche & Zwirner, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiffs in this case are the trustees of three pension funds of the Hotel Employees and Restaurant Employees International Union ("HERIU"). The defendant, Amivest Corporation, is the former investment manager of these funds. The Trustees claim that Amivest violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1100 *et seq.* and the Rule 10b–5 of the Securities Exchange Act of 1934. The Trustees also

seek recovery under various common law tort theories. Amivest has moved to dismiss the claim for lack of jurisdiction or, in the alternative, to transfer the case to the Southern District of New York. For the reasons given below, we grant the motion to dismiss in part, and deny the motion to transfer.

## BACKGROUND

Amivest began its association with the HERIU when it became the investment manager and investment advisor of the HERIU Welfare Pension Fund ("Welfare Fund"). This fund is the largest of the three funds represented in this suit. The HERIU Officers and Employees Pension Fund ("Employee Fund") and the HERIU Officers and Staff Pension Fund ("Staff Fund") soon followed suit and began to use Amivest as an investment manager and advisor.

Amivest invested in several mutual funds on behalf of the three HERIU pension funds. Some of these mutual funds paid Amivest substantial commissions for the investments it made on behalf of the pension funds. According to the Trustees, Amivest concealed these commissions and retained these fees despite the fact that it was already receiving a substantial fee directly from the pension funds. In August of 1986, the Trustees discovered this practice and terminated their relationship with Amivest.

The Trustees claim that they are entitled to recovery on a number of theories. The Trustees' primary claim is that Amivest breached a fiduciary duty it owed to the funds under §§ 1104 and 1106 of ERISA. The Trustees also contend that Amivest's practice of retaining and concealing commissions entitles them to damages under § 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934. Finally, the Trustees seek recovery under the common law theories of conversion, fraud and deceit, and breach of fiduciary duty. In addition to compensatory relief, the Trustees seek exemplary damages and an accounting.

## DISCUSSION

### A. Motion to Transfer

Amivest moves to transfer this action to the Southern District of New York on two grounds. First, it argues that venue in this district is improper under the ERISA venue provision, 29 U.S.C. § 1132(e)(2). Second, Amivest maintains that transfer is appropriate under 28 U.S.C. § 1404(a) because the Southern District of New York is a more convenient forum. However, we find that this district is an appropriate venue for the Trustees' claim.

The ERISA venue provision upon which Amivest relies provides that venue is appropriate where the plan is administered, where the breach took place, or where the defendant resides or may be found. 29 U.S.C. § 1132(e). Amivest contends that New York is the only appropriate venue under the three criteria of this provision. First, it argues that because one of the funds is administered in Washington D.C., venue is not proper on the basis that this is the place where "the plan is administered." Second, it maintains that the breach "clearly" took place in New York. Finally, it notes that venue would be appropriate in New York because this is the residence of the defendant or where the defendant may be found.

In addition to the ERISA venue provision, Amivest also relies on the language of 28 U.S.C. § 1404(a) to support its motion. According to Amivest, considerations of convenience and justice compel transfer to the Southern District of New York. It points to the fact that its principal place of business is in New York, as well as various witnesses and documentary evidence.

We undertake our consideration of Amivest's motion against a backdrop of judicial and congressional deference to an ERISA plaintiff's choice of forum. The ERISA venue provision is to be liberally interpreted; Congress intended to expand, rather than restrict, the ERISA plaintiff's choice of forum. *Varsic v. U.S. Dist. Ct. for Cent Dist. etc.*, 607 F.2d 245, 247 (9th Cir.1979); *Trustees v. Best Automatic Fire Protection, Inc.*, 578 F.Supp. 94, 95 (D.Md.

1983). A district court considering a motion to transfer an ERISA case should be sensitive to the congressional intent to protect the financial integrity of employee benefit plans and the well being of participants and beneficiaries. *Dugan v. M.W. Dozing,* 727 F.Supp. 417, 419 (1989); *Varsic,* 607 F.2d at 247. Unless it is clearly outweighed by other factors, the Trustees' choice of forum is entitled to deference. *Dugan,* 727 F.Supp. at pp. 418–19 (citations omitted).

■ Although Amivest contends that venue is inappropriate under each of the criteria set forth in § 1132(e), any of these criteria could support venue in this district. First, two of the three pension funds are administered in this district. While the third fund is administered in Washington D.C., the personnel and administration of this fund overlaps with the management of the Funds administered in Illinois, where most of the administrators and trustees reside. Moreover, the Washington fund is the smallest of the three funds. Therefore, for all practical purposes, this district is the district where the funds are administered. *See Trustees v. Best Automatic Fire Protection, Inc.,* 578 F.Supp. at 95 (Venue was proper where the funds which were at the center of the controversy were located in the district). The second prong of § 1132(e), the district where the breach took place, also weighs against Amivest's motion. Amivest mailed monthly reports into Illinois and attended Trustees' meetings in this state. Courts have held that, under Illinois law, such activities can constitute the commission of an act in Illinois even though the defendant is not physically present. *See e.g., Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984). Finally, venue is appropriate in this district because Amivest can be "found" in Illinois. For purposes of § 1132(e), an ERISA defendant can be found in any district that can appropriately assert personal jurisdiction. *Varsic,* 607 F.2d at 247. This Court has personal jurisdiction over Amivest under the Due Process Clause. As noted above, Amivest attended Trustee meetings in Illinois and mailed reports to the Trustees in Illinois.

If the allegations in the complaint are true, these actions were part of an ongoing fraud, and therefore directly related to this cause of action. Furthermore, Amivest must have had knowledge that it had an ongoing business relationship with Illinois entities, in which it operated in a fiduciary capacity. In other words, the relationship between this cause of action, Amivest and the State of Illinois are close enough that traditional notions of fair play and substantial justice would not be offended by asserting jurisdiction over Amivest. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977); *Saylor v. Dyniewski,* 836 F.2d 341, 344 (7th Cir.1988). Therefore, we reject Amivest's contention that the case should be transferred on the basis of § 1132(e).

■ We also reject the argument that convenience and justice favor granting the motion to transfer. Amivest claims that the Southern District of New York is more convenient because that district is the location of its corporate headquarters, several of its witnesses and documentary evidence. However, the Trustees identify factors that parallel those upon which Amivest relies. The majority of the Trustees, their witnesses and their documentary evidence are located in this district. If these were the only factors to be weighed, the scale would be virtually balanced. However, the congressional intent in favor of the financial integrity of employee benefit plans tips the scale radically in favor of the Trustees. If forced to litigate in New York, the pension funds would be burdened with significant additional expense and managerial hardship. This, in turn, could threaten the well being of the participants and their beneficiaries. The ERISA venue provision was intended to prevent this type of burden. *See Varsic,* 607 F.2d at 247; *Dugan v. M.W. Dozing,* 727 F.Supp. at 418–19 and cases cited therein. In light of these considerations, we deny the motion to transfer.

## B. Motion to Dismiss

Amivest argues that the Trustees lack standing to bring the ERISA claim, and

that the complaint fails to state a cause of action under the Securities Exchange Act. Because Amivest believes that the federal question claims are without merit, it also seeks dismissal of the pendent state law claims on jurisdictional grounds.

In its motion, Amivest does not address the substance of the ERISA claims alleged by the Trustees. Rather, it disputes the Trustee's statutory authority to bring these claims. According to Amivest, although ERISA authorizes various entities to bring claims for the breach of a fiduciary duty, the Trustees do not constitute such an entity. Therefore, Amivest argues that they lack standing to bring the claim.

■ Only certain entities are empowered to bring civil claims under ERISA. The statute provides that only the Secretary of Labor, participants, beneficiaries and fiduciaries may bring an action for the breach of a fiduciary duty. 29 U.S.C. § 1132(a). Moreover, federal courts have exclusive jurisdiction only over civil actions brought by the Secretary, a participant, a beneficiary or a fiduciary. 29 U.S.C. § 1132(e). According to Amivest, the Trustees are not one of the prescribed entities entitled to bring a civil action in federal court.

We disagree. The Trustees are fiduciaries of the pension plans and, therefore, are authorized to bring a civil ERISA claim for breach of fiduciary duty. The definition of a fiduciary is provided in § 1002(21)(A) of the statute. This section provides that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The ERISA definition of a fiduciary should be given a broad reading. *Mutual Life Ins. Co. of New York v. Yampol,* 840 F.2d 421, 425 (7th Cir.1988).

The Trustees have alleged facts that bring them within the statutory definition of a fiduciary. For example, the Trustees executed the contracts with Amivest. These contracts gave Amivest the power to effect securities transactions on behalf of the Funds. (Cmplt., ¶ 2, 3). Certainly, the execution of such a contract constitutes the exercise of discretionary authority on behalf of the Funds. Indeed, numerous courts have held that pension fund trustees with similar duties are fiduciaries within the meaning of ERISA. *See e.g., Peoria Union Stock Yards Co. v. Penn Mut. Life Ins.,* 698 F.2d 320, 325 (7th Cir.1983) (trustees had standing to sue under ERISA); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 635 (W.D.Wis.1979) (a trustee of a pension benefit plan is a fiduciary under § 1002(21)(A)); *Czyz v. General Pension Bd., Bethlehem Steel Corp.,* 578 F.Supp. 126, 129 (W.D.Pa.1983); *Donovan v. Daugherty,* 550 F.Supp. 390, 403 (S.D. Ala.1982). *See also, Amato v. Western Union Intern., Inc.,* 773 F.2d 1402, 1417 (2nd Cir.1985) (Court assumes that trustees are fiduciaries).

Amivest contends that we should dismiss the ERISA claims despite the fact that the Trustees are fiduciaries with standing. According to Amivest, the real plaintiffs are the Funds themselves. Amivest supports this argument with its observation that the Trustees are not individually named in the caption of the complaint, and that the complaint refers to the Funds as the plaintiffs. Because ERISA does not authorize a fund to bring a complaint, Amivest contends that we should dismiss the ERISA claims on this ground.

■ This argument ignores the relationship between a trust and its trustee. A trust cannot litigate on its own behalf; the trustee is the proper party to litigate issues on behalf of the trust. *See e.g., Pierce v. Chester Johnson Elec. Co.,* 117 Ill.App.3d 867, 73 Ill.Dec. 311, 313, 454 N.E.2d 55, 57 (1st Dist.1983) (trustees possess power to sue in a representative capacity on behalf of the trust); *Village of Brookfield v. Pentis,* 101 F.2d 516 (7th Cir.1939) (trustee proper party to litigate on behalf of trust); *In re Admiral Merchants Motor Freight,* 11 B.R. 63 (Bankr.Minn.1981) (party with

capacity or legal right to bring action on behalf of trust is trustee); Restatement, 2nd, Trusts, § 280. While the trustee is the named plaintiff, it is the interest of the trust that is actually being litigated. Thus, it should not surprise Amivest that the interests of the HERIU pension funds are the focal point of the allegations included in the complaint. While it may be appropriate for the Trustees to be named individually in the caption and for internal references within the complaint to specify that the Trustees are actually the plaintiffs, we decline to dismiss the complaint on these technical grounds. Instead, we grant the Trustees leave to amend the complaint to reflect these matters.

In addition to its attack on the ERISA claim, Amivest also urges to dismiss the Trustees' claims under the Securities Exchange Act of 1934. Amivest argues that the Trustees have failed to allege that they have suffered damages in connection with the purchase or sale of a security. The Trustees claim that they have satisfied this requirement by alleging that the alleged fraud induced them to hire Amivest to buy and sell securities (the mutual funds) on behalf of the pension funds.

As both parties acknowledge, § 10(b) and Rule 10b–5 demand that the alleged fraud be "in connection with" the purchase or sale of a security. Both the Seventh Circuit and Supreme Court have instructed that this requirement is to be interpreted flexibly, rather than technically or restrictively. *See e.g., Abrams v. Oppenheimer Government Securities, Inc.,* 737 F.2d 582, 593 (7th Cir.1984); *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Thus, rather than a "direct and close relationship," all that is required is some nexus between the alleged fraud and a purchase or sale of a security.

However, even with the benefit of a liberal interpretation of the standard, we are unable to find that the Trustees have alleged fraud in connection with the purchase or sale of a security. The fraud alleged in the present case centers on the contractual and fiduciary obligations that

Amivest owed to the pension funds. The connection of the mutual funds to the alleged fraud is only tangential. Rule 10b–5 and § 10(b) proscribe fraud in connection with the purchase or sale of a security; it is not enough that the fraud occurs in a transaction of which a security is a part. *Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930 (2nd Cir.1984), cited with approval in *Schlifke v. Seafirst Corp.,* 866 F.2d 935, 946 (7th Cir.1989).

This distinction was emphasized in *Congregation of Passion, Holy Cross v. Kidder Peabody,* 800 F.2d 177 (7th Cir.1986), which is factually similar to this case. The plaintiffs, a congregation of Roman Catholic priests and brothers, hired an investment advisor to implement a portfolio strategy and make investments on behalf of a retirement fund. Later, the Congregation learned that the investment manager had been taking excessive investment risks.

The Congregation attempted to state a cause of action under § 10(b) and Rule 10b–5 against its investment manager. However, the Court affirmed the dismissal of these claims because the alleged wrongdoing was not "in connection" with the purchase or sale of a security. The Court stated that, "we cannot imply a violation of section 10(b) and Rule 10b–5 when the plaintiff transferred to [the defendant] full authority to make investment decisions. The Congregation made no investment decisions; it hired [the defendant] for that purpose." *Id.* at 181. The Court held that the Congregation's claim related to its relationship with its investment manager, and not to any decision to buy or sell any particular security. *Id.* Such a relationship is not protected by § 10(b) and Rule 10b–5. *Id. See also, O'Brien v. Continental Illinois Nat. Bank & Trust,* 593 F.2d 54, 60 (7th Cir.1979).

As in *Congregation of Passion,* the fraud alleged by the Trustees relates only to their relationship with Amivest. The alleged fraud was not related to a decision whether or not to invest in a particular security. Therefore, we find that the Trustees have failed to plead facts sufficient to establish that the fraud occurred

"in connection with" the purchase or sale of a security.

In addition to the Trustees' failure to meet the "in connection with" element, we also doubt their ability to fulfill the requirement that the alleged fraud was material to the investment decision. In determining whether this requirement has been satisfied, "the appropriate inquiry is whether information disclosed or withheld affected an *investment* decision." *LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 931, *cert. denied,* —— U.S. ——, 109 S.Ct. 311, 102 L.Ed.2d 329 (7th Cir.1988) (emphasis in original; citations omitted). "A fraud that does not affect the decision to make the investment in which the loss complained of is incurred is not actionable under Rule 10b–5." *Latigo Ventures v. Laventhol & Horwath,* 876 F.2d 1322 (7th Cir.1989) (citation omitted). The Trustees have alleged only that they should have received the commissions which were retained by Amivest. They have failed to allege any facts that would indicate that they would have not purchased the mutual funds absent the alleged fraud. This is an additional ground that warrants dismissal of the § 10(b) and Rule 10b–5 claims.[1]

## CONCLUSION

For the reasons stated above, Amivest's motion to dismiss is granted in part and denied in part. The motion to transfer the cause to the Southern District of New York is denied. It is so ordered.

---

1. Amivest's final argument in its motion to dismiss is that we should dismiss the Illinois common law claims for lack of jurisdiction. However, Amivest premises its claim that we dismiss the state claims on an assumption that the federal claims would be dismissed. Since the Trustee's ERISA claim survives Amivest's motion, we may exercise jurisdiction over the state law claims against Amivest. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).