**W.E. "Sonny" SANDERS, et al.,
individually and on behalf of all
others similarly situated,**

v.

**STATE STREET BANK AND
TRUST COMPANY.**

**Civ. A. No. G–92–500.**

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 18, 1993.

Gregory B. Enos, Burwell & Enos, Inc., Texas City, TX, for plaintiffs.

Ervin A. Apffel, McLeod Alexander Powel & Apffel P.C., Galveston, TX, Alice J. Smith, Zachary D. Fasman, Paul Hastings Janofsky & Walker, Washington, DC, for defendant.

## ORDER

KENT, District Judge.

Before the Court are several motions filed by Defendant State Street Bank and Trust Company ("State Street"): a Motion to Dismiss Plaintiffs' Securities Act Claim Pursuant to F.R.C.P. 12(b)(6); a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) for Lack of Personal Jurisdiction over the Defendant; a Motion to Dismiss Plaintiffs' ERISA Count Pursuant to F.R.C.P. 12(b)(3) for Improper Venue; a Motion to Transfer Venue; and a Motion to Dismiss Plaintiffs' Common Law Fraud and Negligent Misrepresentation Claims. Because the Plaintiffs' First Amended Complaint omits any allegation that State Street violated the Securities Act, the Court does not address the motion concerning this matter, and that motion is hereby STRICKEN as moot. As to the other motions, for the reasons set forth below, the Court DENIES State Street's: Motion to Dismiss for Lack of Personal Jurisdiction; Motion to Dismiss Plaintiffs' ERISA Claim for Improper Venue; and Motion to Transfer Venue. However, the Court GRANTS State Street's Motion to Dismiss the Plaintiffs' Common Law Fraud and Negligent Misrepresentation (and grossly negligent) Claims.

### Facts

This suit arises out of the alleged mishandling of an employee savings plan which State Street administers for the employees of Amoco Corporation. According to the Plaintiffs' First Amended Complaint, this savings plan permits employees to make contributions from their paychecks to individual accounts that are matched dollar for dollar by Amoco up to certain levels. Participants in the plan then choose to invest these funds into Amoco stock, the money market, and/or U.S. Savings Bonds.

As the plan was originally formulated, employees adjusted the orientation of their investments among the three investment alternatives—called a "spot transaction"—by making a written request at the personnel office where they worked. However, when Amoco hired State Street to administer the plan on October 1, 1991, State Street abolished this system, instituting instead a system wherein spot transactions could be made over the telephone. The Plaintiffs' allegations against State Street revolve around problems that State Street apparently experienced with this telephonic spot transaction system.

The alleged problems began soon after State Street assumed the administration of the savings plan when the price of Amoco's stock began to fall. Naturally, those employees who had invested their savings plan funds in Amoco stock desired to reinvest in the money market or savings bonds. However, although there are approximately 33,000 participants in Amoco's employee savings plan, the Plaintiffs allege that State Street assigned only six operators to handle the spot transactions from the Amoco plan, a number wholly and manifestly insufficient to manage the enormous volume of calls caused by the drop in Amoco stock. Apparently, many plan participants were unable to get through to the State Street operators to make their spot transactions and, consequently, suffered a sub-

stantial decrease in the value of their savings plans.

Subsequent to these events, the nine Plaintiffs who seek to be certified as a class representing all plan participants filed suit in this Court. The Plaintiffs' First Amended Complaint contains four causes of action. The first two claims allege that both Amoco and State Street breached the fiduciary duty imposed by section 1104(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") which savings plan administrators owe to plan participants. The other two claims allege that State Street both engaged in common law fraud and made negligent and grossly negligent misrepresentations. The Plaintiffs also seek equitable relief ordering State Street to alter the system of making spot transactions by telephone so that it handles a large number of calls more efficiently.

*Motion to Dismiss for Lack of Personal Jurisdiction*

The first motion that the Court considers is State Street's assertion that the Court lacks personal jurisdiction over this dispute. Once a court's ability to exercise personal jurisdiction is challenged, the party seeking to establish jurisdiction must make a prima facie showing that personal jurisdiction exists. *See, e.g., Rittenhouse v. Mabry,* 832 F.2d 1380, 1382 (5th Cir. 1987).

Two conditions must be met before a federal court can exercise jurisdiction over a non-resident defendant: (1) the long arm statute of the state in which the court resides authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal constitutional guarantees. *Rittenhouse,* 832 F.2d at 1383–84. Because the Texas long arm statute extends to the limit permitted by the due process clause, *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), this determination necessarily only involves a determination of whether the exercise of jurisdiction is constitutional. *See Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *Rittenhouse,* 832 F.2d at 1384.

To satisfy federal due process, a plaintiff must demonstrate that the defendant has established minimum contacts with the forum state and that the assertion of jurisdiction will comply with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Hall,* 466 U.S. at 414, 104 S.Ct. at 1872; *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under the minimum contacts analysis, a court must determine "whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183. Although not an independent component of minimum contacts analysis, the concept of foreseeability is implicit in the requirement that there be a substantial connection between Texas and the nonresident defendant arising from the conduct purposefully directed by the defendant toward this state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In the Court's estimation, State Street possesses ample contacts with this forum. First, State Street sends quarterly statements to all savings plan participants, 10,221 of whom live in Texas, and mails promissory notes and checks to plan participants who take out loans against their savings plan funds. Additionally, State Street has provided the plan participants with a toll free number with which they can contact State Street and obtain information concerning their account or conduct spot transactions. State Street points out with some justification that the purposeful direction of this contact towards Texas is somewhat militated by the fact that State Street provided this number to plan participants nationwide, not just in Texas. State Street further cites two cases in which the existence of a toll free number did not provide the courts with sufficient contact to exercise jurisdiction. *Franceschi v. Hyatt Corp.,* 747 F.Supp. 138, 142 (D.P.R. 1990); *Smith v. Outward Bound, Inc.,* No.

89–2007, 1990 WL 161044 (E.D.La. Oct. 15, 1990). However, the significance of the nationwide scope of the toll free number is diminished by the fact that State Street's number is not totally accessible to the general public. State Street assigned a personal identification number to each plan participant to use when calling. Without this identification number, the toll free number is largely useless. Moreover, the extension of these personal identification numbers to Texas plan participants is yet another contact with this state.

Still another contact that State Street has with Texas arises out of Amoco's selection of State Street as the plan administrator. In order to become the administrator, State Street had to obtain the approval of the various Amoco employee unions, one of which was the Oil, Chemical & Atomic Workers Local Union 4–449 in Texas City, Texas. The affidavit of W.E. "Sonny" Sanders indicates that before State Street was accepted by the Texas City union, presentations were made at a union meeting regarding the various attributes and benefits of allowing State Street to administer the Amoco savings plan. In the Court's mind, these presentations constitute an unambiguous and purposeful availment of the privilege of conducting activities within Texas.

Finally, the Court concludes that State Street possesses sufficient minimum contacts with this state simply by virtue of being the plan administrator. State Street administers the savings plans of over 10,-000 individuals who reside in this state. These individuals earn the money that they contribute to their savings plans in this state and any transaction altering the orientation of their investments are, from their perspective, made within this state as well. While State Street may conduct its entire operation in Massachusetts, the unvarnished fact is that any action that it takes in regard to the savings plan has a real and important effect in Texas. It is not unreasonable to presume that State Street foresaw this fact and the fact that if any problems occurred with the plan that it would be called to account in the forum where huge numbers of the aggrieved plan participants reside.

■ Having determined that State Street has minimum contacts with this state, the Court must decide whether the exercise of jurisdiction over State Street comports with fair play and substantial justice. The factors to be included in this analysis include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most effective resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metals Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). However, when minimum contacts have been established, the exercise of jurisdiction will only rarely fail to coincide with fair play and substantial justice. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85. In fact, a defendant must present a compelling case that jurisdiction is unreasonable. *Id.* at 477, 105 S.Ct. at 2184.

In this case, State Street cannot demonstrate that jurisdiction is unreasonable. Granted, State Street does indicate that trying this case in Galveston will be somewhat of a burden. But for jurisdictional purposes, this burden is not so extraordinary that it overwhelms the other factors applicable to this analysis. For example, this Court has a tremendous interest in adjudicating ERISA disputes involving the residents of this District, particularly a claim such as this involving literally thousands of such residents. Furthermore, the interstate judicial system's interest in obtaining the most effective resolution of controversies seems to indicate that this Court is a very appropriate place to resolve this dispute, particularly if the Court extends to the Plaintiffs class certification. As far as the Court knows, there are no other suits concerning these facts in any other federal court around the country. Moreover, it appears that most of the problems with the plan occurred in the Southern District of

Texas, and the Court can more than likely schedule this case for trial sooner than any other court.

Therefore, because the Court has determined that State Street has established minimum contacts with the state of Texas and that the exercise of jurisdiction does not conflict with fair play and substantial justice, the Court concludes that it does possess personal jurisdiction over State Street. Consequently, the Court DENIES State Street's Motion to Dismiss for Lack of Personal Jurisdiction.

*Motion to Dismiss Plaintiffs' ERISA Count Pursuant to F.R.C.P. 12(b)(3) for Improper Venue*

■ State Street claims that the Galveston Division of the Southern District of Texas is the incorrect forum for the Plaintiffs' ERISA actions. Under the terms of ERISA's special venue provision, 28 U.S.C. § 1132(e)(2), an ERISA claim can be brought in any of three alternate fori: 1) where the plan is administered; 2) where the breach took place; or 3) where the defendant resides or may be found. In the Court's mind there is no question that State Street administered the Amoco employee savings plan at its home office in Boston, Massachusetts. *See also Sprinzen v. Supreme Court of New Jersey,* 478 F.Supp. 722, 723 (S.D.N.Y.1979); *Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan,* 481 F.Supp. 454, 458–59 (N.D.Ga. 1979). Furthermore, State Street also presents entirely plausible arguments that the alleged breach of fiduciary duty took place in Boston rather than the Southern

District of Texas.[1] However, the Court chooses not to resolve this question because the Court concludes that, for the purposes of ERISA venue, State Street clearly resides or is found within this jurisdiction.

In making this determination, the Court notes that the Fifth Circuit has specifically reserved the question of what constitutes residence under ERISA's venue provision. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 975 n. 9 (5th Cir. 1981). However, two district courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. U.S. District Court for the Central District of California,* 607 F.2d 245 (9th Cir.1979). *See Nieves v. Houston Industries,* 771 F.Supp. 159, 161 (M.D.La.1991); *Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829, 831–32 (E.D.Tex.1987). In *Varsic,* the Ninth Circuit concluded that whether a defendant "resides or may be found" in a jurisdiction for ERISA venue purposes is coextensive to whether a court possesses personal jurisdiction over the defendant. *Varsic,* 607 F.2d at 248. The court reached this decision by first looking at the legislative history of ERISA. Congress' intent that ERISA have as broad an application as possible convinced the Ninth Circuit that the venue provision should be interpreted liberally. *Id.* at 247–48 (citing H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 17 (1973), *reprinted in* [1974] U.S.Code Cong. & Ad.News. pp. 4639, 4655). Furthermore, the court noted that the term "found" has been similarly broadly construed in the context of venue provisions

1. State Street primarily relies on *McFarland v. Yegen,* 699 F.Supp. 10, 13 (D.N.H.1988). In that case, the district court concluded that when a plaintiff's claim alleges a breach of a contractual promise to pay ERISA benefits, the breach occurs where the plaintiff was to receive the benefits of the contract. However, when, as in this case, the plaintiff alleges a breach of the fiduciary duty imposed by ERISA, the breach occurs only where the defendant commits or fails to commit the actions that this duty requires. The New Hampshire court then concluded that for the purposes of that case, the breach of fiduciary duty could only have occurred at the defendants home office in New Jersey. While this Court basically agrees with these general statements of law, the Court is

uncertain whether the application of these general statements in the instant case naturally leads to the conclusion that any alleged breach of fiduciary duty occurred at State Street's offices in Massachusetts. In the Court's mind, there is excellent reason to conclude that the actions which State Street committed or failed to commit have their locus in the Southern District of Texas. For example, if, as asserted by the Plaintiffs, the Defendants had a fiduciary duty to establish an efficient means of conducting spot transactions, then State Street's establishment of the toll free number, and the consequent cessation of the spot transaction capability of the Amoco personnel offices, could be construed as a breach of fiduciary duty.

located in the Copyright Act and the various antitrust acts. *Id.* at 248. Therefore, the Ninth Circuit concluded, whether an ERISA defendant resides or is found in a jurisdiction depends upon whether the defendant has sufficient contacts with the jurisdiction to satisfy the minimum contacts test originally formulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Id.*[2]

This Court wholeheartedly agrees with the *Varsic* decision. Thus, in the instant action, there is no doubt that State Street resides or is found within this jurisdiction since the Court has already elucidated at considerable length its conclusion that State Street falls within the personal jurisdiction of this Court. Consequently, the Court concludes that this Court is a proper forum for the Plaintiffs' ERISA action and, therefore, DENIES State Street's Motion to Dismiss Plaintiffs' ERISA Count Pursuant to F.R.C.P. 12(b)(3) for Improper Venue.

### Motion to Transfer Venue

■ The third motion before the Court is State Street's Motion to Transfer Venue based on 28 U.S.C. § 1404(a). State Street argues that the Court should transfer this case to either Boston, where State Street has its home offices, or Chicago, where significant contacts exist between State Street and Amoco.

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." Whether to transfer a case under this statute is a decision that rests within the sound discretion of the trial court. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *See, e.g., Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966); *Enserch Int'l Exploration, Inc. v. Attock Oil Co.*, 656 F.Supp. 1162, 1167 n. 15 (N.D.Tex.1987). This is especially true where, as here, the plaintiffs file suit in their home state. *See, e.g., Rippy v. Crescent Feed Commodities, Inc.*, 710 F.Supp. 1074, 1079 (S.D.Miss.1988); *Mead Data Central, Inc. v. West Publishing Co.*, 679 F.Supp. 1455, 1465 (S.D.Ohio 1987). State Street present several compelling arguments in support of this motion. However, after carefully considering each relevant factor, the Court concludes that this forum is the most appropriate place to try this case.

State Street's first argument is that the Court should transfer this case to promote the convenience of the parties and witnesses. State Street points with some emphasis to a statement that this Court made in *Continental Airlines v. American Airlines:*

> The convenience of the witnesses is arguably the most important factor in determining whether a case should be transferred pursuant to section 1404(a)... In considering the convenience of witnesses, the Court must primarily consider the convenience of the *key* witnesses. Indeed, the convenience of one key witness may outweigh the convenience of numerous less important witnesses.

805 F.Supp. 1392, 1396 (S.D.Tex.1992) (emphasis in original). State Street then names six potential witnesses who live in the Boston area and describes the thrust of their testimony, which is indeed likely to be crucial to the resolution of this dispute. According to State Street, the convenience of these six witnesses should compel the Court to transfer this case.

---

**2.** Apparently, every court outside the Fifth Circuit that has dealt with this issue also agrees with the *Varsic* decision. *See, e.g., I.A.M. Nat'l Pension Fund v. Wakefield Indus.*, 699 F.2d 1254, 1257 (D.C.Cir.1983); *Trustees of Hotel Employees v. Amivest Corp.*, 733 F.Supp. 1180, 1183 (N.D.Ill.1990); *McFarland v. Yegen*, 699 F.Supp. 10, 13 (D.N.H.1988); *Jansen v. Greyhound Corp.*, 692 F.Supp. 1022, 1024 (N.D.Iowa 1986); *Kanada v. Hartford Life Ins. Co.*, 673 F.Supp. 163, 164 (M.D.La.1987); *Folke v. Schaffer*, 616 F.Supp. 1322, 1325 n. 1 (D.Del.1985); *Bostic v. Ohio River Co.*, 517 F.Supp. 627, 633 (S.D.W.Va.1981); *Ballinger v. Perkins*, 515 F.Supp. 673, 676 (W.D.Va.1981); *Turner v. Cf & I Steel Corp.*, 510 F.Supp. 537, 542 (E.D.Penn.1981).

The Court is not so compelled, however, for two reasons. First, while State Street does accurately quote from *Continental Airlines,* the Court notes that it did not state in that opinion that the convenience of witnesses was the *only* factor to consider when determining whether to transfer venue. In fact, the Court merely stated that the convenience of witnesses is *arguably* the most important factor. Other factors outlined and discussed below convince the Court that this case should remain in Galveston despite the inconvenience and expense that this decision necessarily places on the six potential witnesses named by State Street.

Second, the efficacy of State Street's argument concerning the convenience of key witnesses is weakened by the fact that four of the six individuals named by State Street as potential witnesses are still employees of State Street. In *Continental Airlines,* the Court stated that where key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial. 805 F.Supp. at 1397. Furthermore, State Street does not claim that the two potential witnesses that are no longer State Street employees will not be able to attend the trial under any circumstances. State Street merely claims that it is conceivable that they will not attend. Even if these two individuals absolutely can or will not attend the trial, State Street will not be unreasonably harmed since the Court liberally allows for the presentation of testimony by deposition.

Before passing on to State Street's other arguments concerning their motion to transfer venue, the Court feels constrained to comment on State Street's reliance on

what they refer to as: the "very substantial question of expense and disruption of State Street's business." This argument demonstrates a complete disregard for the expenses of the nine Plaintiffs who brought this action. In *Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823, 826 (S.D.Tex.1993), the Court recently reiterated its position that it will not transfer any case where the only practical effect is a shifting of inconveniences from the non-moving to the moving party. If the Court were to transfer this case to Boston or Chicago, the cost and burden to the Plaintiffs would be excruciating. Granted, in total dollars, the cost to State Street of trying this case in Galveston will quite likely be in excess of the cost to the Plaintiffs of trying it somewhere else. However, in relation to the means possessed by the respective parties, a transfer would be far more burdensome on these Plaintiffs then retaining the case will be on State Street.

State Street's second argument for their Motion to Transfer Venue is that the bulk of the documentary evidence for this trial is located in Boston. In fact, State Street claims that the documents and other tangible evidence relevant to this case comprise more than three hundred boxes. It is likely (indeed virtually certain) that many of these "relevant" documents will not actually be needed for trial. Moreover, the documents can be produced and examined anywhere for discovery purposes.[3] (Indeed, counsel for the Plaintiffs have expressed their willingness to travel to Boston to better facilitate discovery.) Additionally, under Local Rule 11, the admissibility of exhibits may be determined before trial. Thus, the Court can ensure State Street

---

**3.** The Court is rather perplexed by State Street's assertion that the fact that it might rely on Rule 33(c) of the Federal Rules of Civil Procedure provides another reason for a transfer. Rule 33 allows a party to permit on-site inspection of records in lieu of answering interrogatories. To the Court's mind, this fact merely underscores the appropriateness of retaining the case. If State Street plans to allow on-site inspection rather than produce the documents then much of the cost which State Street fears is eliminated. The Court also has little regard for State Street's claim that if it relies on Rule 33, a district court in Massachusetts is better suited to resolve any potential discovery disputes. This concern is apparently predicated upon a complete ignorance of the long-standing discovery practices of this Court. Here, the Court does not entertain discovery related motions and resolves all discovery disputes by conference call. Moreover, the Court can assure these parties, as it does *all* parties appearing before it, complete and prompt access to the Court for resolution of any discovery disputes.

that it will need to transport from Boston to Galveston *only* those relevant, noncumulative documents necessary for trial. Consequently, while the Court recognizes that its retention of this case will engender some expense in transporting these documents to trial, the Court does not feel that it will be so overwhelming as to force the Court to grant a transfer. *See STX, Inc. v. Trik Stik, Inc.*, 708 F.Supp. 1551, 1556 (N.D.Cal.1988) (in absence of other grounds justifying transfer, location of defendant's records was insufficient to compel change of venue).

State Street's third argument for its Motion to Transfer Venue is that it would serve the interests of justice. Boston, State Street claims, has a greater nexus to this case than Galveston. This Court could not agree more with State Street's assertion that the place of the alleged wrong is an important factor in determining whether to transfer a case. *See, e.g., Greiner v. American Motor Sales Corp.*, 645 F.Supp. 277, 278 (E.D.Tex.1986). Indeed, the Supreme Court has stated that "there is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

However, the Court fervently disagrees with State Street that Boston has a greater nexus with this case than Galveston. The Court acknowledges the numerous cases that State Street has cited where district courts have transferred ERISA actions away from the plaintiff's chosen forum on the grounds that the place of administration had greater nexus. *See, e.g., Campbell v. Consolidated Building Specialties*, 683 F.Supp. 271, 273 (D.D.C.1987). Nevertheless, the Court cannot escape the conclusion that the court with the greatest nexus to this case is the one closest to the place where the Plaintiffs were injured, not the place where the savings plan was administered. As the Court explained earlier, despite the fact that State Street administers the Amoco employee savings plan in Boston, any actions it takes regarding the savings plan have a real and immediate effect wherever a plan participant is located. There is no doubt in the Court's mind that

if the Plaintiff's allegations are true, the damage suffered by these Plaintiffs occurred in the Southern District of Texas. This Court possesses a compelling interest in ensuring that individuals who are injured within this district receive prompt and fair compensation for their losses. *Dupre*, 810 F.Supp. 823, 827. Consequently, the Court concludes that the interest of justice points to the retention of this case.

State Street's last argument in favor of its Motion to Transfer Venue is that if the Court concludes that Boston is an inappropriate place to transfer this case then the Court should transfer it to Chicago. State Street bases this assertion on the facts that Chicago also has a greater nexus than Galveston to the facts of this case, in that Illinois has more plan participants than Texas, and in that Illinois law applies to the savings plan. Neither of these reasons even comes close to persuading the Court that it should transfer this case to Chicago. All of the same hardships and costs that would inure to the Plaintiffs if the case were transferred to Boston would also obtain if the case were transferred to Chicago instead. Moreover, Chicago is no more convenient or less costly a forum than Galveston for State Street's witnesses, and Chicago categorically does not have a greater nexus to this case than Galveston.

The Court wishes to particularly address State Street's assertion that the case should be transferred to Chicago because Illinois law applies to the savings plan and in a diversity action it is appropriate that the trial should take place in a forum that is at home with the state law that must govern the case. The Court finds this argument utterly unpersuasive. First, the Court wonders what application State Street feels Illinois state law will have considering that State Street also asks the Court to dismiss the Plaintiffs' state law claims (which the Court herein does). Second, implicit in this assertion is the apparent belief that this Court is incapable of grasping the law of another state. Since when did the development of the common law in the various states so radically diverge from one another that this or *any*

court has no hope of understanding another state's jurisprudence? Remarkably, State Street's Washington D.C. counsel, who asserts this condescending argument, apparently has no apprehension that he will be unable to understand the intricacies of Illinois or Texas law. The Court assures State Street that this Court and its briefing attorneys did indeed graduate from accredited law schools. Therefore, notwithstanding its perceived limitations, the Court is reasonably certain that it has the wherewithal to comprehend the subtleties of Illinois law, to the extent it might still apply.

Aside from the circumstances addressed above, there is one additional factor which convinces the Court that this case should remain in Galveston. That factor is the Court's concern over the possibility of delay or prejudice if the case is transferred. When a § 1404(a) motion to transfer is under consideration, "[a] prompt trial is not without relevance to the convenience of parties and witnesses and the interest of justice." *Fannin v. Jones*, 229 F.2d 368, 369–70 (6th Cir.), *cert. denied*, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956). The trial track in this Court is, for most cases, between three to seven months from Rule 16 conference, well below the average trial track for most Courts around the country. Given the complex nature of this suit, the Court has no illusions of bringing this case to trial within that timeframe. However, the Court is confident that it will be able to hear this case by very early 1994, which is statistically well before any court in Chicago or Boston could likely hear it. The Court fears that if it grants a transfer, this case will languish on the docket of some other court for years to come.

Therefore, the Court concludes that the convenience of potential witnesses and the costs of trying this case in Galveston are not so encumbering as to outweigh: the burden on the Plaintiffs if the case is transferred; this Court's compelling interest in resolving disputes that have a nexus with this forum; and the Court's concern over the possibility of delay or prejudice if it transfers the case. Consequently, the Court DENIES State Street's Motion to Transfer Venue.

*Motion to Dismiss Plaintiffs' Common Law Fraud and Negligent (and grossly negligent) Misrepresentation Claims*

■ The final State Street motion before the Court is the Motion to Dismiss Plaintiffs' Common Law Fraud and Negligent (and grossly negligent) Misrepresentation Claims. State Street properly argues that these two causes of action are preempted by ERISA's broad preemption clause, 29 U.S.C. § 1144(a). In the Court's estimation, this argument i9s meritorious.

ERISA stipulates that its provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The supreme Court has consistently emphasized the expansiveness of the 'relate to' standard and its purpose of establishing the regulation of pension plans as an exclusively federal province." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992) (citing, among others, *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990)). The Court has indicated that the words "relate to" are to be given their "broad common-sense meaning." *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985).

The Court has no doubt that the Plaintiffs' common law fraud and negligent and grossly negligent misrepresentation claims relate to Amoco's employee savings plan. For guidance, the court looks to *Christopher v. Mobil Oil Corp., supra*. In that case, the Fifth Circuit held that a plaintiff's common law fraud action was preempted by ERISA because "a court adjudicating appellant's claims of a fraudulent scheme ... would have to examine, at a minimum, the operation of the plan." *Christopher*, 950 F.2d at 1218. Consequently, the court concluded that the plaintiff's cause of action related to ERISA. In the instant action, the Court cannot review Plaintiff's allegations that State Street committed fraud and made negligent and grossly negligent misrepresentations while administering the savings plan without reviewing the

plan itself. Moreover, "[s]uperimposing state law fraud standards on the elaborate ERISA provisions governing [employee savings plans] ... would undercut the goal of uniform national regulation in the manner that [§ 1144(a) ] seeks to prevent." *Id.* at 1219.

An additional reason that the Plaintiffs' state law causes of action are preempted is that these actions relate to ERISA's comprehensive disclosure (*see generally* 29 U.S.C. §§ 1024(b)(4) & 1102(a)(1)) and plan administration (*see generally* 29 U.S.C. § 1104(a)(1)(A)–(C)) requirements. If the Plaintiffs' allegations that State Street committed fraud and made negligent and grossly negligent misrepresentations in inducing Amoco and its unions to select State Street as the plan administrator are correct, then State Street necessarily has also run afoul of the above provisions. Consequently, the Plaintiff's state law claims are preempted since ERISA displaces all state law claims "within its sphere, even including state laws that are consistent with ERISA'S substantive requirements." *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2389.

*Conclusion*

For the reasons set forth above, the Court DENIES State Street's Motion to Dismiss for Lack of Personal Jurisdiction, Motion to Dismiss Plaintiffs' ERISA Claim for Improper Venue, and Motion to Transfer Venue. However, the Court GRANTS State Street's Motion to Dismiss the Plaintiffs' Common Law Fraud and Negligent (and grossly negligent) Misrepresentation Claims. Consequently, the Court DISMISSES the Plaintiff's common law fraud and negligent and grossly negligent misrepresentation claims WITH PREJUDICE, with each party to bear its taxable costs and expenses incurred herein to date. The Court also ORDERS the parties to file nothing further in this Court concerning the issues and questions treated by the Court in this Order.

IT IS SO ORDERED.