Edward P. CZYZ, Plaintiff,

v.

**GENERAL PENSION BOARD, BETH-LEHEM STEEL CORPORATION,** Defendant.

**Civ. A. No. 83–990.**

United States District Court,
W.D. Pennsylvania.

Dec. 7, 1983.

Ill.Dec. 656, 371 N.E.2d 373 (1978).

128

R.L. Pawlowski, Johnstown, Pa., for plaintiff.

G. Daniel Carney, Richard P. Mather, Pittsburgh, Pa., for defendant.

## MEMORANDUM

ZIEGLER, District Judge.

(1) This is a civil action based on the Employee Retirement Income Act (ERISA), specifically 29 U.S.C. § 1132(a)(1)(B). Plaintiff, Edward Czyz, was employed by Bethlehem Steel Corporation from July 17, 1950 until his retirement on December 1, 1982. Defendant, General Pension Board, was created pursuant to the pension plan for salaried employees of Bethlehem Steel Corporation and its subsidiaries.

(2) Pending before the court is the motion of defendant for summary judgment. For the reasons that follow, the motion will be granted.

(3) Edward Czyz applied for a lump-sum payment under the pension plan. The plan authorizes such a distribution if an applicant has attained the age of 55 and the application is accompanied by evidence, satisfactory to the Board, of "good health." See Defendant's Exhibit B, p. 24, Bethlehem 1980 Salaried Pension Plan.

(4) The normal procedure, when a lump-sum payment is sought, commences with a physical examination by the claimant's personal physician. The result of the examination and the application are submitted to the plan administrator for evaluation by the medical director of Bethlehem Steel Corporation, pursuant to the Manual of Medical Selection compiled by Aetna Life Insurance Company. This manual is a standardized system for assessing the health risks associated with certain medical conditions. Aetna utilizes the manual in developing insurability criteria in connection with its life and casualty insurance business. The manual assigns certain "debit points" for various medical conditions. If an applicant's debit points exceed 150, the corporate medical director advises the plan administrator that the applicant is not in good health. The administrator then informs the applicant that the payment has been denied and the right to appeal to the Board.

(5) Upon appeal, the original medical records and any additional medical information the applicant deems relevant are provided to the Board. The Board then forwards the information to Aetna's Medical Department because the Board determined in 1981 that an effective review procedure required that an independent agency, experienced in evaluating various medical conditions, be utilized. Aetna's medical department was selected as the reviewing body to determine the good health of an applicant. To date, if Aetna's conclusion has differed

from that of the corporate medical director, Aetna's opinion has controlled.

(6) Plaintiff's application for a lump-sum payment was denied by the plan administrator following the conclusion of the corporate medical director that he lacked good health. The medical information submitted by plaintiff established that he suffered from bladder carcinoma and diabetes. The medical director evaluated plaintiff's condition pursuant to the Manual of Medical Selection. Since the total debit points assigned to the condition was 165, 15 points in excess of the allowable limit of 150, claimant was deemed not to be in good health.

(7) Plaintiff appealed the decision to the Board, which forwarded the relevant medical information to the independent review agency. Aetna's medical department concurred with the determination of lack of good health. In fact, Aetna assigned a total of 195 debit points to the medical condition which clearly exceeded the 150 debit point cutoff. Plaintiff's request for a lump-sum payment was denied.

■ (8) The starting point for our analysis concerns the right of a participant in a pension plan to a lump-sum payment pursuant to ERISA. No specific mode of payment is provided for in the Act. *Pompano v. Michael Schiavone & Sons Inc.*, 680 F.2d 911, 914 (2d Cir.1982). ERISA's purpose is to guarantee pension payments to participants by insuring the honest administration of financially sound plans. *Id.* Thus, the minimum requirements for the payment of benefits are met if a plan specifies the basis upon which payments are to be made, so as to satisfy the legislative purpose that each participant knows exactly where he stands with respect to the plan. *Id.; See* 29 U.S.C. § 1102(b)(4). Any right to a particular method or form of payment must be found in the pension agreement. *Fine v. Semet*, 699 F.2d 1091, 1093 (11th Cir.1983).

■ (9) Since the pension agreement determines the terms and conditions for receipt of a lump-sum payment, Edward Czyz cannot be heard to argue that the plan may not contain a requirement of "good health" as a prerequisite to receipt of a lump-sum payment. Plaintiff may, of course, scrutinize the actions of the Board, as fiduciaries under ERISA, in two respects: (a) whether the Board properly interpreted the meaning of good health; and (b) whether the plan was uniformly applied to all participants.

■ (10) Board members are "named fiduciaries" as that term is defined by ERISA. Pension Plan p. 49–50 and 64. Although the Court of Appeals has not addressed the standard of review applicable to a "named fiduciary," it has articulated the standard with regard to a trustee's action. Judicial review is limited to determining whether the trustee's actions were arbitrary and capricious. *Rosen v. Hotel and Restaurant Employees and Bartenders Union of Philadelphia*, 637 F.2d 592, 596 n. 5 (3d Cir.1981). A "named fiduciary" and a "trustee" are considered "fiduciaries" as that term is defined under ERISA, with one exception not applicable here, 29 U.S.C. § 1002(21)(A), 1102(a)(1), (2) and 1103(a), and therefore the standard of review for a trustee is applicable to a "named fiduciary."

■ (11) Turning first to the issue whether the Board's interpretation of the term "good health" was arbitrary or capricious, we conclude that it was not. In performing our jurisprudential function we must consider: (1) Whether the term or provision in question was given a fair and reasonable reading; (2) uniformity of construction; and (3) the unanticipated cost to the plan. *Dennard v. Richards Group Inc.*, 681 F.2d 306, 314 (5th Cir.1982).

■ (12) In resolving the first factor, namely, whether the Board gave a reasonable and good faith reading to a term, the following factors are relevant: (1) the internal consistency of the plan under the interpretation by the Board; (2) any relevant regulations or guide lines formulated by appropriate administrative agencies; and (3) the factual background of the deter-

mination as it may relate to lack of good faith.

■ (13) The Board's utilization of an independent agency to determine good health does not create an internal inconsistency in the plan. Plaintiff cannot claim that the Board's interpretation was contrary to its plain meaning. Rather, the words "good health" are ambiguous and not susceptible to a clear-cut determination. In fact the plan grants the Board absolute discretion to determine what constitutes good health since an applicant must present evidence satisfactory to the Board of good health. Pension Plan at p. 24. Commensurate with absolute discretion the plan envisions that the Board may resort to other sources to ascertain good health, empowering it "to determine from time to time the tables and interest rates to be used in actuarial computations to be made for the purpose of lump-sum payments." *Id.* at p. 25.

■ (14) Plaintiff does not dispute the Board's discretion or the power to use an independent agency to determine good health. Rather plaintiff asserts that the determination was arbitrary and capricious because bladder carcinoma and diabetes are unrelated medical conditions. Therefore, according to plaintiff, the debit points assigned to each condition by Aetna cannot be combined to exceed 150 points. Plaintiff posits the issue as whether the action of defendant in combining the debit points of two unrelated medical problems was arbitrary and capricious. Plaintiff's Brief at 3. Supporting this contention are affidavits from two physicians indicating that the medical conditions are unrelated and thus it was improper to combine the debit points for each.

(15) Plaintiff's argument misses the mark. The pertinent inquiry is whether defendant's actions of utilizing an independent agency to define a term in the pension plan is arbitrary and capricious. Defendant sought the advice of a consultant which standardized the system for assessing the health risks involved with certain medical conditions, based on underwriting and mor-tality standards. Plaintiff would have this court act as an expert in the disciplines of medicine, underwriting, mortality rates and actuarial computations, contrary to the admonition that courts must avoid excessive interference with pension plan administration. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 599 (2d Cir.1983).

(16) The submission of affidavits by plaintiff creates no material issue of fact. It bears emphasizing that a trial court should not conduct de novo hearings relative to eligibility for benefits. *Id.* We hold that the actions of defendant in seeking an independent, expert consultant to define a term in a pension plan is not arbitrary and capricious.

(17) There are no relevant regulations or guide lines, formulated by appropriate administrative agencies, defining the term good health. That factor is not apposite here.

■ (18) Analyzing the final factor, namely, whether the factual background of the determination by the Board created an inference of lack of good faith, we are required to address the issues of uniformity of construction and unanticipated costs to the plan. The administrator and secretary of the Board have stated by affidavit that "the good health test was adopted in order to protect the plan assets and other plan participants from anti-selection against the plan and prevent a windfall to plan participants who were not in good health." Affidavit of David W. Kempken, Defendant's Exhibit A, p. 2 ¶ 4. Unquestionably, the possible dissipation of assets with ensuing loss to participants is a sound basis for a fiduciary action. *Fine v. Semet,* 699 F.2d 1091, 1095 (11th Cir.1983).

■ (19) Additionally, Mr. Kempken has stated that "the reason an independent agency was utilized was to establish a more consistent reviewing procedure," Kempken affidavit p. 4 ¶ 10, because prior to utilizing Aetna as a reviewing agency, any disagreement between the corporate

medical director and a claimant's personal physician was resolved by obtaining a mutually agreeable third physician. This third opinion as to good health was binding on the parties. *Id.* p. 3 ¶ 9. However, the procedure became cumbersome and inefficient in light of the increase in lump-sum applications. From the period 1974 to December 31, 1980 only 38 applications were filed. In contrast, from the period January 1, 1981 to December 31, 1982, 2,692 applications were processed. *Id.* p. 3 ¶¶ 5–7. We hold that an attempt to attain uniformity and consistency in a plan's review procedure does not constitute arbitrary and capricious action by a fiduciary.

(20) Finally we find that the standard of good health was uniformly applied to all participants of the plan. All appeals from the decision of the corporate medical director are now forwarded directly to Aetna. More importantly, since implementation of this review process, no applicant who received more than 150 debit points was deemed to be in good health. Kempken affidavit p. 8 ¶ 33. The Board has treated Edward Czyz similar to any other participant who applied for a lump-sum payment. The motion of defendant for summary judgment will be granted. A written order will follow.