**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PAUL H. STAMPER, et al.,

     Plaintiffs-Appellants,

v.

TOTAL PETROLEUM, INC.
RETIREMENT PLAN FOR HOURLY
RATED EMPLOYEES WITH THE
BARGAINING UNIT
REPRESENTED BY LOCAL 642 OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS (AFL-
CIO), et al.,

     Defendants-Appellees.

No. 98-3013

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 96-1418-WEB)**

---

Marc Rifkind (Thomas J. Hart, Slevin & Hart, Washington, D.C., and Charles
Schwartz, Blake & Uhlig, Kansas City, Kansas with him on briefs), Slevin &
Hart, Washington, D.C., for Plaintiffs-Appellants.

Jeffrey E. Goering (Lee Thompson with him on briefs), Triplett, Woolf &
Garretson, LLC, Wichita, Kansas, for Defendants-Appellees.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

**EBEL**, Circuit Judge.

Plaintiffs-appellants ("appellants"), former employees of Total Petroleum ("Total"), sued Total, the pension plan it sponsored ("Plan"), and the Plan's fiduciaries (collectively "appellees") under the Employee Retirement Insurance Security Act of 1974 and its amendments ("ERISA") on the ground that Total unlawfully amended the Plan in a way that reduced the appellants' "accrued benefits." The district court granted appellees' motion for summary judgment and dismissed appellant's case. We now affirm.

## BACKGROUND

The appellants are all former employees of Total at its facility in Arkansas City, Kansas, who were terminated in 1996 when Total closed its Arkansas City petroleum plant. At termination, appellants were all under the age of 55 years-old and "fully vested" participants in Total's Retirement Plan for Hourly-Rated Employees within the bargaining units represented by Local 642 of the International Union of Operating Engineers, AFL-CIO.

The Plan qualifies as an employee benefit plan under ERISA. See 29 U.S.C. § 1002(3). Total is the Plan sponsor within the meaning of 29 U.S.C. §

1002(16)(B), and a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A). Total effectuated the original Plan on April 1, 1978 ("1978 Plan").

Section 6.02 of the 1978 Plan stated: "In the event of termination[1] of service of any participant for any reason other than his death or retirement under the Plan, he shall be entitled, in lieu of any other benefits under the Plan, to his vested percentage in a deferred pension as determined under the terms of Section 6.03, [depending on the employee's age and years of service] . . . ." 1978 Plan § 6.02. Section 6.03 provides for a "deferred severance benefit" which is defined as "the participant's vested interest . . . in his 'accrued retirement income' determined at the date of his termination. The participant's 'accrued retirement income' shall consist of the amount of normal retirement income accrued for his credited service as defined in Section 4.02 to the date of termination of his service." Id. § 6.03. Section 6.04 outlined the payment method for "deferred severance benefits":

> [M]onthly installments . . . of one-twelfth of the annual amount computed under Section 6.03 . . . shall commence on the first day of the month next following the member's attainment of his normal retirement date [defined in Section 3.01 as the first day of the month coincident with or next following the participant's sixty-fifth birthday]. Provided, however, any terminated participant may elect to receive his retirement income commencing on the first day of any

---

[1]The 1978 Plan states: "The service of any participant shall terminate on . . . the date of his dismissal, resignation, release, discharge from the service of the Company, or loss of seniority . . . ." 1978 Plan § 6.01.

month within the ten (10) year period immediately preceding his normal retirement date, <u>which retirement income shall be actuarially reduced in accordance with the standard actuarial reduction tables used by the actuary to take into account the participant's younger age and earlier commencement of payment of benefits</u>.

<u>Id.</u> § 6.04 (emphasis added). The 1978 Plan did not contain the "standard actuarial reduction tables" to be used nor did it explicitly state the actuarial assumptions that would be used to reduce benefits for early claims.

Finally, the 1978 Plan provided that Total could "without the assent of any other party hereto, amend this Plan at any time. Any such amendment shall be made by a written instrument executed by the Company on the order of its Board of Directors and shall become effective as of the date specified in such instrument." <u>Id.</u> § 13.01.

On November 15, 1996, Total amended the 1978 Plan retroactive to January 1, 1989 ("1996 Plan"). The 1996 Plan provided that a terminated employee "whose termination occurs on or after completion of 5 Years of Service shall have a fully nonforfeitable right to a Deferred Vested Benefit."[2] 1996 Plan § 4.06(a). The 1996 Plan stated that "the Participant's Deferred Vested Benefit shall be equal to his Accrued Benefit computed as of the date of his termination of employment." <u>Id.</u> § 4.06(c). Under the 1996 Plan, "Deferred Vested Benefits"

---

[2]For the purposes of interpreting the two plans at issue in this case, we understand "deferred severance benefits" (as used in the 1978 Plan) to represent the same benefits as "Deferred Vested Benefits" (as used in the 1996 Plan).

- 4 -

were available to terminated employees who have completed at least five years of service (as under the 1978 Plan); and, as under the 1978 Plan, such benefits were to "commence as of the date that would have been [the employee's] Normal Retirement Date [defined in Section 4.02(b) as the first day of the month coincident with or next following the employee's attainment of age sixty-five]." Id. § 4.06(b). Further, like the 1978 Plan, the 1996 Plan permitted terminated employees to claim their "deferred vested benefits" any time in the ten years immediately preceding normal retirement age (i.e., any time between age 55 and age 65). See id. § 4.06(b). This provision is qualified as follows: "The Participant's Deferred Vested Benefit shall be reduced in accordance with the Actuarial Equivalent reduction factors as described in Section 10.10 if payments begin before what would have been the Participant's Normal Retirement Date [the first day of the month coincident with or next following the employee's attainment of age sixty-five]." Id. § 4.06(c). Thus, like the 1978 Plan, the amended plan contemplated payout of severance benefits at age 65, but permitted plan participants to elect to receive an actuarially reduced amount starting anytime after attaining the age of 55. However, unlike the 1978 Plan, the 1996 Plan specified the actuarial assumptions to be used in reducing such benefits:

> Section 10.10   Actuarial Assumptions.   Except as otherwise specifically required by law and provided herein, wherever the Plan calls for the computation of a present value, an actuarially equivalent value, or any other value requiring application of actuarial assumptions, an annual

- 5 -

5% rate of interest and the Basic UP-1984 Mortality Table set forward one year shall be used . . . .

Id. § 10.10.

It is these actuarial reduction assumptions that make up the crux of appellants' suit. The former Total employees filed a complaint against appellees in the United States District Court for the District of Kansas pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3) alleging that the amendments to the 1978 Plan violate 29 U.S.C. § 1054(g), 26 U.S.C. § 411(d)(6), and 26 U.S.C. § 401(a)(25). Appellants argue that the 1978 Plan violated provisions of the Internal Revenue Code ("Tax Code") and ERISA that require pension plans to specify actuarial assumptions to be used in reducing benefits, and that the 1996 amendments violate Tax Code and ERISA prohibitions against amending pension plans in a way that reduces an accrued benefit. Appellants therefore claim that the actuarial reduction factors in both plans should be stricken, and they should be entitled, at any time after age 55, to the unreduced benefit they would be entitled to at age 65.

The district court agreed with appellants that the 1978 Plan's discretionary actuarial reduction factors violated Tax Code and ERISA provisions, and that the 1996 amendments were likewise adopted in violation of the Tax Code and ERISA. However, the district court concluded that Total could cure deficiencies in the 1978 Plan by employing "reasonable" actuarial assumptions to calculate deferred

severance benefits for plan participants wishing to collect prior to age 65. After a stipulation by the parties that "the actuarial assumptions specified in Section 10.10 of the [1996 Plan] are within the range of reasonable actuarial assumptions for determining actuarial equivalence," the district court granted summary judgment for appellees. For different reasons we AFFIRM.

## DISCUSSION

I.   **Whether appellants are entitled to unreduced retirement benefits at age 55.**

Because this case comes to us on appeal from the district court's summary judgment order our review is de novo. See Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). We examine the facts in the light most favorable to the appellants, and will affirm the district court's summary judgment order only if the record demonstrates that there is no genuine issue as to any material fact. See id.

The appellants' argument runs essentially as follows. First, they argue, the 1978 Plan's vague statement that appellants' "deferred severance benefits" would be "actuarially reduced in accordance with the standard actuarial reduction tables used by the actuary" if they elected to receive the benefits prior to reaching age 65 was unlawful under the Tax Code and ERISA, which both require that pension plan payouts be definitely determinable from the plain terms of the plan. Second, they continue, the amendments contained in the 1996 Plan, which cured the

deficiency in the 1978 Plan by specifying the precise actuarial reduction figures and methods to be used, were also unlawful in light of "anti-cutback" provisions in the Tax Code and ERISA which make it impermissible to amend pension plans in a way that reduces recipients' accrued benefits. Thus, appellants contend that the reduction factors in both plans are unlawful and must be stricken, entitling them, at age 55, to the unreduced deferred severance benefit payments that both plans contemplate paying out only after participants have reached age 65.[3] We disagree and affirm the summary judgment order in favor of appellees.

We address first appellants' claim that the 1978 Plan violated the Tax Code and ERISA because it contained discretionary actuarial reduction references. As noted above, the 1978 Plan provided that:

> any terminated participant may elect to receive his retirement income commencing on the first day of any month within the ten (10) year period immediately preceding his normal retirement date, which retirement income shall be actuarially reduced in accordance with the standard actuarial reduction tables used by the actuary to take into account the participant's younger age and earlier commencement of payment of benefits.

---

[3]We note that this court has observed that providing an unreduced retirement benefit prior to normal retirement age creates a windfall for the beneficiary. See American Stores Co. v. American Stores Co. Retirement Plan, 928 F.2d 986, 990 (10th Cir. 1991) ("[A] failure actuarially to reduce an early retirement benefit to reflect its earlier payment has the effect of increasing its value so that it no longer reflects the retirement benefit calculated as of the normal retirement age.").

1978 Plan § 6.04 (emphasis added). This provision was in effect until the November 1996 amendments. Appellants argue that the discretion afforded in this provision "violated both [Tax] Code Section 401(a)(25) as well as ERISA and the [Tax] Code's definitely determinable requirement."

Title 26 U.S.C. § 401(a)(25) reads:

> **(25) Requirement that actuarial assumptions be specified.**— A defined benefit plan shall not be treated as providing definitely determinable benefits unless, whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are specified in the plan in a way which precludes employer discretion.

26 U.S.C. § 401(a)(25). Appellants claim that the 1978 Plan did not specify the actuarial assumptions to be used to calculate "deferred severance benefits" claimed before age 65, and thus they are entitled to relief.

However, in this case we do not need to decide whether the 1978 Plan violates the Tax Code provision of 26 U.S.C. § 401(a)(25) because in any event we conclude that § 401(a)(25) does not provide ERISA relief for appellants.

As the Seventh Circuit said:

> There is no basis, under . . . ERISA, to find that the provisions of [26 U.S.C.] § 401—which relate solely to the criteria for tax qualification under the Internal Revenue Code—are imposed on pension plans by the substantive terms of ERISA. We are convinced that had Congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language as it did in 29 U.S.C. § 1202(c) with §§ 410(a), 411 and 412 of the I.R.C. We thus refuse to read § 401(a) of the I.R.C. as applicable to ERISA.

Reklau v. Merchants Nat'l Corp., 808 F.2d 628, 631 (7th Cir. 1986) (internal citation, quotation, and footnote omitted); see also West v. Clarke Murphy, Jr. Self Employed Pension Plan, 99 F.3d 166, 169 (4th Cir. 1996) (discussing Reklau with approval and observing that § 401 of the Internal Revenue Code does not modify ERISA).

Section 401(a)(25)'s requirement that actuarial assumptions be specified in order to qualify a pension plan for tax exempt status arose out of a 1979 Revenue Ruling made pursuant to 26 U.S.C. § 401. See 53 Fed. Reg. 26050, 26050-51 (1988). Revenue Ruling 79-90 stated that: "A defined benefit plan which provides optional forms of retirement benefits which are, according to the provisions of the plan, 'actuarially equivalent' to the normal benefit must specify the actuarial assumptions used to compute the amounts of such optional benefits." Rev. Rul. 79-90, 1979-1 CB 155. As the district court observed, this Revenue Ruling "was subsequently codified by the Retirement Equity Act ('REA') of 1984 in 26 U.S.C. § 401(a)(25)." However, while the REA incorporated a number of requirements into both the Tax Code and ERISA, importantly, the REA incorporated Revenue Ruling 79-90's "actuarial assumptions" requirement only into the Tax Code and not into ERISA. See Cooke v. Lynn Sand & Stone Co., 673 F. Supp. 14, 21 n.8 (D. Mass. 1986) ("These provisions of Revenue Ruling 79-90 were incorporated into the Internal Revenue Code by the § 301(b) of the

REA, 26 U.S.C. § 401(a)(25). However, they were not incorporated into ERISA."). By comparison, Revenue Ruling 81-12, which states that plan amendments may not change actuarial assumptions in a way that would reduce a participant's accrued benefits, was incorporated by REA § 301(a)(1) and (2), into the Tax Code (at 26 U.S.C. §§ 411 and 412) and ERISA (at 29 U.S.C. § 1054(g)). In light of the Supreme Court's observation that "ERISA is a comprehensive and reticulated statute, which Congress adopted after careful study of private retirement pension plans," Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981) (quotation and citation omitted), we believe it would be improper to read into ERISA a requirement Congress elected to apply only to the Tax Code.[4]

_____

[4]District courts considering the issue of whether 26 U.S.C. § 401(a)(25) applies to ERISA and provides a cause of action for pension plan beneficiaries have split on the question. Compare Kiefer v. Ceridian Corp., 976 F. Supp. 829, 833 (D. Minn. 1997) ("ERISA requires the plans to set forth the actuarial assumptions used to compute lump-sum benefits, in order that the plan provides a 'definitely determinable benefit' which precludes employer discretion and change without formal amendment." (citing 29 U.S.C. § 1102(b)(4) and 26 U.S.C. § 401(a)(25))), with McDaniel v. Chevron Corp., No. C-96-2891-CAL, 1998 WL 355534, *4-*5 (N.D. Cal. June 30, 1998) ("The term 'definitely determinable' used in Kiefer originates from the tax qualification requirements of the Revenue Code. Cases using that language specifically refer to tax qualification, and the parties do not cite any case (except Kiefer) using that language in reference to the ERISA statute . . . . This court concludes that (1) Revenue Code § 401(a)(25) is not incorporated into ERISA; (2) ERISA does not require a statement of 'definitely determinable benefits,' (3) Revenue Code violations do not give rise to substantive rights under ERISA, and (4) Revenue Code § 401(a)(25) does not provide the standard for interpretation of [29 U.S.C. §1102(b)(4)]. They are different statutes serving different purposes, each one setting forth its respective

(continued...)

- 11 -

Accordingly, section 401(a)(25) cannot provide appellants with their requested ERISA relief.

Appellants also contend that the 1978 Plan violated the Tax Code's and ERISA's asserted requirement that pension plan benefits be "definitely determinable." Under Treasury Department regulations promulgated pursuant to 26 U.S.C. § 401(a), in order for a pension plan to qualify under the Tax Code, the plan must provide for "the payment of definitely determinable benefits to . . . employees over a period of years, usually for life, after retirement." See 26 C.F.R. § 1.401-1(b)(1)(i). However, for the reasons stated above, the provisions of 26 U.S.C. § 401(a) and the regulations promulgated under them cannot form the basis of an ERISA action. Nevertheless, appellants argue that ERISA contains an independent requirement which, read in light of Tax Code § 401 in general, and § 401(a)(25) in particular, precludes employer discretion in setting actuarial assumptions to be used in calculating pension plan benefits. Appellants contend that ERISA's requirement that "[e]very employee benefit plan shall . . . specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), obliges plans to provide "definitely determinable" benefits and prohibits plans from employing discretionary actuarial assumptions. In essence,

_____

[4](...continued)
requirements. The Plan here need only describe 'the basis on which payments are to be made.'" ).

- 12 -

appellants ask us to write into ERISA what Congress wrote only into the Tax Code (through §401(a)(25)) and what the Treasury Department wrote only into regulations under the Tax Code (in 26 C.F.R. § 1.401-1(b)(1)(i)).

While we recognize the inconsistent treatment of this issue in the federal courts,[5] we believe it would be imprudent to read into ERISA a requirement that neither Congress nor the Treasury Department (nor the Department of Labor) saw fit to make explicit. Neither the text of 29 U.S.C. § 1102(b)(4), nor any regulation interpreting it, makes clear what it means to "specify the basis on which payments are to be made to and from the plan." However, juxtaposed against the very explicit requirements of plan specificity contained in 26 U.S.C. § 401(a)(25) and 26 C.F.R. 1.401-1(b)(1)(i), the ERISA provision in 29 U.S.C. § 1102(b)(4) is best read to impose only a more general requirement that pension

---

[5]Compare Dooley v. American Airlines, Inc., 797 F.2d 1447, 1452-53 (7th Cir. 1986) (refusing to read "definitely determinable" requirement into 29 U.S.C. § 1102(b)(4)), and McDaniel, 1998 WL 355534, at *3-*5 (observing that "ERISA § 402(b)(4) is part of a larger, more general requirement scheme" than Tax Code § 401, thus 29 U.S.C. §1102(b)(4) imposes no requirement of "definitely determinable" benefits), with Kiefer, 976 F. Supp. at 833 ("ERISA requires the plans to set forth the actuarial assumptions used to compute lump-sum benefits, in order that the plan provides a 'definitely determinable benefit' which precludes employer discretion and change without formal amendment." (citing, inter alia, 29 U.S.C. § 1102(b)(4))), and Czyz v. General Pension Bd., Bethlehem Steel Corp., 578 F. Supp. 126, 129 (W.D. Pa.1983) (stating that ERISA § 402(b)(4) requirement is fulfilled "if a plan specifies the basis upon which payments are to be made, so as to satisfy the legislative purpose that each participant knows exactly where he stands with respect to the plan.").

plans put beneficiaries on notice of the principles under which plan payouts are determined.

Here, the 1978 Plan explicitly provided that "deferred severance benefits" claimed before age 65 would be reduced according to "standard actuarial reduction tables." 1978 Plan § 6.04. While the Plan's actuarial consultant testified at his deposition that there exists no single set of factors to determine actuarial equivalence, ("there is a variety of different assumptions that could be used to calculate an early retirement actuarial equivalent benefit"), the 1978 Plan's reference to "standard actuarial reduction tables" was sufficiently clear to notify plan participants of the basis on which payments were to be made to and from the Plan. Thus, the Plan adequately set forth the principles that early retirement benefits were (1) to be reduced to reflect the accelerated receipt of benefits and (2) the reduction was to be in accordance with "standard actuarial reduction tables." Despite the "variety of assumptions" that could be used to calculate actuarial value of the benefits at issue, here the world of possibilities is confined by the Plan's reference to "standard" actuarial reduction tables and the additional requirement recognized by the district court that the actuarial reduction tables be "reasonable" (a point to which appellants stipulated in this case).

Next, appellants argue that the November 1996 Plan amendments, which made explicit the actuarial assumptions that would be used to reduce severance

benefits claimed prior to normal retirement age, worked to reduce their accrued benefits, and thus were adopted in violation of 29 U.S.C. § 1054(g) and 26 U.S.C. § 411(d)(6).  However, appellants have failed to establish a genuine dispute of fact on this point in this record.

That relevant portion of the ERISA subsection provides:

**(1)** The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . .

**(2)** For purposes of paragraph (1), a plan amendment which has the effect of —

> **(A)** eliminating or reducing an early retirement benefit or retirement-type subsidy (as defined in regulations), or

> **(B)** eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g)(1)-(2).[6]

---

[6]Title 26 U.S.C. § 411(d)(6) imposes the same limitation in order for a pension plan to qualify under the Tax Code:

**(A) In general.** — A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan . . . .

**(B) Treatment of certain plan amendments.**—For purposes of subparagraph (A), a plan amendment which has the effect of—

> **(i)** eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(continued...)

Appellees have not disputed that the "deferred vested benefit" at issue in this case qualifies as "an early retirement benefit." Thus, we now turn to the question of whether the 1996 amendments to the 1978 Plan had the effect of eliminating or reducing such benefits. Under Total's 1978 Plan, terminated employees were permitted to receive their full vested benefit at age 65 or an amount "actuarially reduced in accordance with the standard actuarial reduction tables used by the actuary" anytime after age 55. 1978 Plan § 6.04. The 1996 amendments specified the precise actuarial assumptions to be used in calculating reductions for employees' "deferred severance benefit" collected before age 65, thereby eliminating any uncertainty contained in the 1978 Plan provisions.

Had the 1978 Plan provided an actuarial formula by which "deferred severance benefits" were to be reduced for pre-age-65 claims, we could simply compare the amount that that formula produced with the amount that the 1996 Plan's actuarial reduction formula produced. If calculations under the latter plan arrived at a figure lower than the former plan would have produced, we could rule in appellants' favor. However, because the 1978 Plan failed to provide the

---

[6](...continued)
    **(ii)** eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

26 U.S.C. § 411(d)(6).

precise methods and figures by which to calculate amounts for actuarially reduced deferred severance benefits, no ready comparison of the amounts rendered by the 1978 and 1996 Plan formulae can be made, and the record does not show that the 1996 amendments reduce accrued benefits such that they violate 26 U.S.C. § 411(d)(6) and 29 U.S.C. § 1054(g).

In an effort to demonstrate that the actuarial assumptions employed under the pre-amendment 1978 Plan would have offered higher benefits than the 1996 Plan actuarial reduction assumptions, appellants submitted nine letters in the district court in support of their motion for summary judgment. Eight of these letters say nothing more as to actuarial reduction than the generalities of the 1978 Plan: "You will have the option of filing for early retirement at or after age 55 but the monthly benefit amount will be actuarially reduced. The reduction percentage is determined by your age (in years and months) at the time you file for your benefit." (See, e.g., Letter of 9/27/89 to Michael Atkins (Appellant App. 75).) Only one of the nine letters indicates any specifics as to the actuarial reductions. That letter indicates that if the terminated employee claimed her early retirement benefits at age 55, she would receive "40.59% of the full [age 65] amount," and if she claimed the benefits at age 60 she would receive "61.88% of the benefit at age 65." (See Letter of 12/21/88 to Marjorie E. Brickey (Appellant App. 74).) These numbers are consistent with the actuarially reduced amounts

calculated under the 1996 amendments, which appellants concede would be approximately 40% of the full (age 65) benefit if claimed at age 55, and approximately 60% of the full (age 65) benefit if claimed at age 60. Accordingly, the appellants have failed to make a showing sufficient to defeat summary judgment that the 1996 amendments would reduce an accrued benefit to which they are entitled. Therefore, we cannot conclude that the appellants have made a sufficient showing that the 1996 amendments violate 29 U.S.C. § 1054(g).[7]

Appellants further claim that Treasury Regulations promulgated pursuant to 26 U.S.C. § 411(d)(6) established a deadline by which to eliminate discretionary payout provisions,[8] which deadline passed no later than 1990.[9] Specifically,

_____

[7]As such, the Tenth Circuit cases appellants cite for support are inapposite. Far from presenting "the very issue presented by this case," as appellants claim, Counts v. Kissack Water & Oil Serv., Inc., 986 F.2d 1322 (10th Cir. 1993), involved an amendment to a pension plan that eliminated an optional form of benefit, which this court held "by its very terms . . . violated the proscription of 29 U.S.C. § 1054(g)(2)." Id. at 1324. And, in Pratt v. Petroleum Prod. Management, Inc. Employee Sav. Plan & Trust, 920 F.2d 651 (10th Cir. 1990), we recognized a violation of 29 U.S.C. § 1054(g), where an amendment to a pension plan would have resulted in an employee receiving a payout of $7,184.37 as opposed to the pre-amendment amount of $27,692.32. See id. at 652-53, 660-61.

[8]For the purposes of resolving this claim, we assume that the 1978 Plan's reference to reduction according to "standard actuarial reduction tables" constitutes a discretionary provision.

[9]Title 29 U.S.C. § 1202(c) makes these Treasury Regulations applicable to 29 U.S.C. § 1054(g):

(continued...)

appellants claim that the timing of all amendments made in order to eliminate discretionary benefits is governed by 26 C.F.R. § 1.411(d)-4, Q-8, which provides:

> (b) Transitional alternatives.   If the availability of an optional forms of benefit, early or late retirement benefit, or retirement-type subsidy under an existing plan is conditioned on the exercise of employer discretion, the plan must be amended either to eliminate the optional form of benefit, early or late retirement benefit, or retirement-type subsidy to make such benefit available to all participants without limitation, or to apply objective and nondiscriminatory conditions to the availability of the optional form of benefit, early or later retirement benefit, or retirement-type subsidy.  See paragraph (d) of this Q&A-8 for rules limiting the period during which section 411(d)(6) protected benefits may be eliminated or reduced under this paragraph.

26 C.F.R. § 1.411(d)-4, A-8(b).  Subparagraph (d) of Q&A-8 reads:

> (d) Limitation on transitional alternatives.  The transitional alternatives permitting the elimination or reduction of section 411(d)(6) protected benefits are only permissible until the applicable effective date for the plan (see Q&A-9 of this section).  After the applicable effective date, any amendment . . . that eliminates or reduces a section 411(d)(6) protected benefit or imposes new objective conditions on the availability of such benefit will fail to qualify for the exception to section 411(d)(6) provided in Q&A-8.  This is the case without regard to whether the section 411(d)(6) protected benefit is subject to employer discretion.

---

[9](...continued)

Regulations prescribed by the Secretary of the Treasury under section 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this [ERISA] chapter.

- 19 -

26 C.F.R. § 1.411(d)-4, A-8(d).[10]  The transitional timing provisions of the

Treasury Regulation required that amendments to collectively bargained pension

plans that reduced or eliminated benefits be made by "the first day of the first

plan year commencing on or after January 1, 1989."  26 C.F.R. § 1.411(d)-4, A-

9(c)(3).  Accordingly, appellants argue that Total's 1996 amendments were tardy

and unlawful.

"Having missed the deadline [to lawfully amend its Plan]," appellants

argue, Total "was forever precluded from later adopting and applying [actuarial

reduction factors] to existing participants."  This result, they claim, is compelled

by our decision in Counts.  However, unlike the present challenged plan

amendment, Counts involved the question of whether an optional benefit could be

eliminated after the deadline to amend, which implicates the specific text of the

Treasury Regulation.  Here, we have already stated that appellants have failed to

establish that calculating their "deferred severance benefits" according to the

1996 actuarial assumptions would reduce their benefits as compared to the

amount they would have received under the 1978 Plan actuarial reduction method.

---

[10]We acknowledge some ambiguity in the phrase "imposes new objective conditions on the availability of such benefits."  However, because this regulation is promulgated under 26 U.S.C. § 411(d)(6), which deals specifically with the reduction or elimination of benefits, we believe this phrase should be similarly read.  Because there is no showing that the 1996 amendment reduced or eliminated benefits, we believe this regulation does not apply.

Because the timing provisions of the Treasury Regulations apply only to reductions and eliminations of benefits and appellants have failed to demonstrate any such reduction or elimination, their argument based on the Treasury Regulations must fail.[11]

Thus, we conclude that appellants who elect to begin receiving their severance benefits prior to reaching age 65 are entitled only to an actuarially reduced benefit, and not the unreduced benefit appellants seek.

**II.     Should appellants' "deferred vested benefit" be reduced according to the Early Retirement provisions in the Summary Plan Document?**

Appellants argue that if this court holds that appellants' "deferred severance benefits" are subject to reduction, they are entitled to reduction according to the Early Retirement provisions of the Summary Plan Description ("SPD") of the 1978 Plan, which would provide them payments of 75% of their age 65 benefit at age 55, and 100% of their age 65 benefit as early as age 60.

---

[11]Moreover, even if we found that the Treasury Regulations technically prohibited the 1996 amendments to the pension plan, we would not agree with appellants that those amendments must be stricken such that appellants would be entitled to their age 65 benefit unreduced for actuarial equivalence. Appellant, even assuming that the 1996 amendments violated the Treasury Regulations, have failed to assert any injury arising out of the tardiness of the of the amendments. They do not claim to have relied on the 1978 provision to their detriment or to have been injured in any other way by the continuing operation of the assumed unlawful actuarial reduction provision of the 1978 Plan until after it was amended in 1996.

Appellants claim that "[a]ny reasonable person reading [the SPD] would understand that the benefit they are entitled to, if they are terminated prior to age 55, would be reduced by the same percentages as the Early Retirement pension." We disagree.

Appellants point to the SPD provision that states: "If you resign or are discharged from the service of the Company, you will receive a deferred vested pension benefit equal to your vested interest as specified in the schedule below." The "schedule below" indicates that employees are 0% vested until they have been employed for five years, and they are 100% vested after five years. This provision says nothing about how that fully vested amount will be paid out. Hence, we reject appellants' strained argument that the payout would be according to the Early Retirement reduction schedule.

While the SPD may be silent on the actuarial reduction assumptions of "deferred severance benefits," it in no way contradicts the Plan regarding these benefits. As such, the Plan must control, and the Plan surely does not contemplate using the same schedule for "deferred severance benefits" and "early retirement benefits."[12] Moreover, appellants make no claim that they actually detrimentally relied on the SPD. They make only generalized claims that as a

_____

[12]Under the 1978 Plan, unlike the provisions for terminated employees, the provision for "early retirement" pension provides an incentive to retire prior to age 65.

matter of course only SPDs, and not complete plans, are provided to pension plan participants, and that reasonable people would have assumed that terminated employees would be paid according to the early retirement benefit schedule. These contentions cannot suffice to supplant the terms of the Plan. <u>Chiles v. Ceridian Corp.</u>, 95 F.3d 1505, 1519 (10th Cir. 1996) ("Where the SPD incorrectly described benefits in the plan, to secure relief, [the claimant] must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description." (internal citations and quotations omitted)). Accordingly, we hold that the actuarial assumptions set out in Section 10.10 of the 1996 Plan, rather than the early retirement benefits schedule in the SPD, are to be used to calculate the actuarial reductions to appellants' "deferred severance benefits."

## CONCLUSION

We AFFIRM the district court's grant of summary judgment.